OCTAVIUS TAYLOR, Executor of B. W. Britt, *v.* L. H. TAYLOR.

*Abandonment of Contract—Landlord and Tenant—Evidence.*

1. While a vendee may, by parol agreement with the vendor in consideration of the rescission of the contract of purchase, become the latter's tenant without surrendering possession of the land, yet, in order to avoid the contract upon this ground, the vendor or those claiming under him must show an unconditional surrender by the vendee of his rights, and the acts or conduct relied upon as evidence of abandonment must be positive, unequivocal and inconsistent with the contract of purchase.

2. Where occupant of land is a vendee or mortgagor in default, although he may for some purposes be considered a tenant at will, he is not a lessee whose crop, under the provisions of §1754 of *The Code*, is vested in the landlord.

3. It is the province, if not the duty, of the *nisi prius* Judge to instruct the jury upon the testimony what acts constitute a renunciation of the contract, and it is error for him to leave to them to determine whether the contract still subsists without giving a definition of what amounts to abandonment.

4. Where the vendee refused to surrender the vendor's bond for title, and his notes given for the purchase-money remained in the possession of the vendor or one claiming under him, proof that the

vendee had at various times agreed to pay rent was not, of itself, evidence to show abandonment, and it was error in the Judge to submit the question of abandonment to the jury upon such testimony.

CIVIL ACTION, tried at April Term, 1892, of GREENE Superior Court, before *Winston, J.*

In this action the ancillary remedy of claim and delivery was resorted to for the purpose of enforcing an alleged lien for rent and advances for agricultural purposes. The plaintiff's testator Britt died September 15, 1891. The crop of that year was seized by the plaintiff executor to satisfy a claim of $125 (note) and $160 (advances made by the testator). In 1889, plaintiff's testator had contracted to convey to defendant the land on which the crop seized was raised in 1891, and had executed and delivered a bond for title, which defendant still holds and offered on the trial to show that he was a vendee, not a tenant, and that the proceeding could not be maintained against him. It was admitted also that plaintiff held and claimed as devisee of the land under the testator's will five notes, executed for the purchase-money by the the defendant to Britt, each for the sum of $400, the first due January 1, 1891, and the last January 1, 1894.

The main question involved was whether the testimony offered to show abandonment was sufficient to go to the jury for that purpose. The following testimony was admitted in the face of the objection of the defendant to any evidence tending to show a renting of the land in controversy, known as the Mewborn place:

The plaintiff, Octavius Taylor, testified as follows: "I am Britt's executor, and took possession of his property. Defendant lived on the land in controversy and raised the crops sued for on said land in 1891. I demanded the rents and an account for advances made him by Britt to make said

crop—supplies, $160; rents, $125. Defendant said the rent was $160, but it fell to $125. Defendant told me that the rent for 1891 was $125, the value of the crop in controversy about $200—two bales of cotton, 1,600 pounds of seed-cotton, four stacks of fodder, one hundred and eighty bushels cotton seed, twenty-five barrels of corn. Defendant has left and abandoned the premises this year; he has since then come to me to rent the land for this year (1892), but I would not rent to him." (The above evidence was excepted to by defendant).

*Cross-examined*—"Defendant told me in 1891 he could not pay for the land; I think this was after the death of Britt. I found defendant's notes for the purchase money for the land among Britt's papers when I qualified as executor, and have seen the contract of purchase in defendant's possession. Defendant gave Britt a mortgage in 1891 on a mule, and paid the mortgage; this was for the purchase of the mule. Britt devised the land in controversy to his sister (wife of Whitted), and I turned over the notes of the defendant for the purchase-money to her."

Thomas Moye testified for the plaintiff as follows: "I lived on Britt's land and heard defendant and Britt talking, in the spring of 1891, and the defendant was grumbling about rent. Britt said $125 was the least he would take if he would clear two acres of land; defendant agreed to clear two acres. This conversation took place at Britt's store." (The defendant's objection to this evidence was overruled, and he excepted).

Upon cross-examination this witness stated that he did not hear the defendant agree to give $125 as rent.

The plaintiff was recalled, and testified that there were no credits on the notes, which were for four hundred dollars each.

Whitted, the brother-in-law of Britt, says: "My wife is

now in possession of the land." In order to show abandonment the Court permitted this witness to say that the defendant came to rent the land of his wife for 1892. (Defendant's objection was overruled, and he excepted). "I told him I would rent to him if he would cancel the contract of purchase. I offered to give up the notes if he would cancel the contract. My wife holds the notes yet against the defendant, and we would like to have our money for them."

The plaintiff rested, and the defendant offered the written contract of purchase and the bond for title in evidence, and offered no other testimony. The other material facts are stated in the opinion. The defendant appealed.

*Mr. George Rountree,* for plaintiff.
*Mr. George M. Lindsay,* for defendant (appellant).

Avery, J.: A vendee may, by parol agreement with the vendor in consideration of rescinding the contract of purchase, become the tenant of the latter as to the land without surrendering possession, provided no rights have supervened that would be defeated by such rescission. *Riley* v. *Jordan,* 75 N. C., 180; 12 Am. & Eng. Enc., 263, and note 5; Wood on Landlord and Tenant, page 14, note 8; *Durant* v. *Taylor,* 89 N. C., 351. But in order to avoid the contract upon this ground, the vendor, or those claiming under him, must show an unconditional surrender by the vendee of his rights (*Riley* v. *Jordan, supra*), and acts or conduct relied upon as evidence of abandonment must be "positive, unequivocal and inconsistent with the contract." *Faw* v. *Whittington,* 72 N. C., 321; *Holden* v. *Purifoy,* 108 N. C., 163. Where, as in the case at bar, the vendee enters under a bond for title and has executed notes for the purchase-money which are held by the vendor, the surrender of bond and notes by the holders to the maker and obligor respectively

has been repeatedly declared such a renunciation as would annul the contract of purchase. *Faw* v. *Whittington, supra; McDougald* v. *Graham,* 75 N. C., 310; *Fall* v. *Carpenter,* 1 Dev. & Bat. Eq., 237; *Holden* v. *Purifoy, supra; Miller* v. *Pierce,* 104 N. C., 389; *Fortune* v. *Watkins,* 94 N. C., 304.

If the defendant's relation to the representatives of B. W. Britt is still that of vendee to vendor, though he may be in contemplation of law for some purposes considered a tenant at will, he is not a lessee within the provisions of the statute (*The Code*, §1754), the title to whose crop is deemed vested in the landlord. *McCombs* v. *Wallace,* 66 N. C., 481; *McMillan* v. *Love,* 72 N. C., 18; *Parker* v. *Allen,* 84 N. C., 466; *Hughes* v. *Mason,* 84 N. C., 472. The section mentioned applies to cases where "lands shall be rented or leased by agreement, written or oral, for agricultural purposes, or shall be cultivated by a cropper," and is, like section 1756, plainly inapplicable where the occupant of land is a vendee or mortgagor.

The question now presented is, whether the parties to the original contract, or those succeeding to their rights, had directly or by an unavoidable implication arising from acts inconsistent with a purpose to insist on its enforcement, annulled or abandoned it and entered into a new agreement, by which the defendant became a lessee instead of a vendee. It is, however, the province of the *nisi prius* Judge, if not his duty, to instruct the jury upon the testimony what acts, if ascertained by them to have been done by the parties, constituted a renunciation of the contract. It was error in him to leave the jury without a definition of what amounted to an abandonment, to determine whether the contract of purchase was still subsisting; and especially was this true if the evidence was not sufficient, in any phase of it, to be submitted as tending to show a renunciation or annulment of the original agreement by the parties thereto. *Faw* v. *Whittington, supra.*

The Judge told the jury that "if they should believe from the evidence that defendant had entered upon the land under this contract of purchase and had thereafter abandoned his contract of purchase and had rented from B. W. Britt, the plaintiff, as Britt's executor, by virtue of the landlord and tenant act, would be the owner of all the crops raised on the land until the rents and advances were paid." Britt died September 15, 1891, and the crops of that year raised by the defendant on the land, which Britt had previously contracted to sell to him, were seized by the plaintiff, his executor, to satisfy a lien for the rent of that year ($125), and for advances to the amount of $150. It was admitted that the defendant still held the bond for title, bearing date in the year 1889, and that the sister of Britt and wife of the witness Whitted held the five notes executed for the purchase-money, each for the sum of four hundred dollars, the first due January 1, 1890, and the last January 1, 1894.

The exception to the charge must therefore be sustained, if there was not sufficient evidence to be submitted to the jury upon the question of abandonment. The testimony bearing upon the subject was objected to, at the time of its admission, as insufficient and incompetent evidence of abandonment, and the defendant thus presented the same objection at two stages of the trial.

In speaking of the surrender of a deed by the grantee before registration, the Court said of the decisions in *Hare* v. *Jernigan*, 76 N. C., 471, and *Beaman* v. *Simmons, Ibid.*, 43, "these later cases have introduced a new principle into our law, which we are not disposed to push beyond the point to which it has already gone." *Phifer* v. *Barnhardt*, 88 N. C., 333. Up to that time it seems to have been settled, first, that a purchaser claiming by virtue of a constructive trust against another, who had purchased for him

and advanced the purchase-money, might by an unconditional surrender of his rights become, by parol agreement, a tenant under the purchaser or grantee, *Riley* v. *Jordan, supra;* second, that a grantee, claiming under an unregistered deed might, if third parties had acquired no supervening rights under the conveyance, surrender the deed and thereby revest in the grantor any equitable interest that may have passed by it. *Hare* v. *Jernigan, supra,* and *Hogan* v. *Strayhorn,* 65 N. C., 279 ; third, that where the contract is executory, the re-delivery of the bond or agreement to the vendor and the return of the notes for the purchase-money to the maker constitute unequivocal evidence of a purpose on both sides to abandon and annul the agreement entirely. *McDougald* v. *Graham, supra; Beaman* v. *Simmons, supra.*

It seems that the wife of the plaintiff executor had acquired the possession of the land in the early portion of the year 1892, when the defendant approached the plaintiff and proposed to rent the land in controversy for that year. The plaintiff offered on behalf of Mrs. Whitted, who claimed the land as devisee of Britt, to lease to defendant, provided he would surrender the bond for title executed by Britt and accept his five unpaid notes; but the defendant did not accede to the proposition and still holds the bond, which has been registered and was offered in evidence and relied upon to show that he occupies the relation of vendee to plaintiffs, to whom the legal title passed by the devise. In view of the refusal to surrender the bond, and the fact that the notes were in the possession of Britt when he died, and are now held by his daughter, we think that the learned Judge who tried the case below erred when, in the face of the objections made in the progress of the trial, he submitted the question of abandonment to the jury and refused a motion for new trial founded upon an exception to the

charge. The proof of the declarations of the defendant at various times, to the effect that he had agreed to pay $125 as rent for the year 1891, was not, of itself or in connection with any other testimony admitted, evidence to be submitted to the jury to show abandonment, when the notes were still held by the payee and the bond was in the hands of the obligee. The abandonment was not proved directly or by unavoidable inference in any view of the testimony.

The question as to the necessity for ascertaining, by admissions of the parties or a finding of the jury, the value of property seized by virtue of the proceeding of claim and delivery, is eliminated by resting our decision upon the ground of the want of evidence of abandonment; but it may be well to say that the late statute, as to the form of the judgment in such proceeding, is discussed and construed in *Hall* v. *Tillman*, 110 N. C., 220.

For the reasons given, we think that the Court below erred, and the defendant is entitled to the benefit of a

New Trial.